**2014-1820**

# United States Court of Appeals For The Federal Circuit

INTEGRATED TECHNOLOGY CORPORATION AND
NEVADA INTEGRATED TECHNOLOGY CORPORATION,

*Plaintiffs-Appellees,*

v.

RUDOLPH TECHNOLOGIES, INC. AND
MARINER ACQUISITION COMPANY LLC,

*Defendants-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA IN NO. 06-CV-2182,
CHIEF JUDGE ROSLYN O. SILVER

**BRIEF OF DEFENDANTS-APPELLANTS**

DANIEL W. MCDONALD
RACHEL C. HUGHEY
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 332-5300

**January 13, 2015**          *Attorneys for Defendants-Appellants*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants Rudolph Technologies, Inc., et al.

certifies the following:

1.  **The full name of every party represented by us is:**

    Rudolph Technologies Incorporated
    Mariner Acquisition Company LLC

2.  **The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:**

    Not applicable

3.  **All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curae represented by us are:**

    Mariner Acquisition Company LLC no longer exists.  It was merged into August Technology Corporation (a wholly owned subsidiary of Rudolph Technologies Incorporated) in 2008.

4.  **The name of all law firms and the partners or associates that appeared for Defendants-Appellants Rudolph Technologies, Inc., et al. in trial court or are expected to appear in this Court are:**

    **Merchant & Gould PC**
    Daniel W. McDonald
    Rachel C. Hughey
    Joseph E. Lee
    William D. Schultz
    Heather J. Kliebenstein
    Regina Vogel Culbert (formerly of Merchant & Gould)
    Ernest W. Grumbles, III (formerly of Merchant & Gould)

    **Snell & Wilmer LLP**
    Dan W. Goldfine
    David Gary Barker

**Quarles & Brady LLP**
Wendy Kemp Akbar
Donald Roger Cassling
Deanna Conn
Charles W. Jirauch
Ryan Michael Schultz
Richard W. Young

**Covington & Burling LLP**
Alan H. Blankenheimer

**Heller Ehrman White & Mcauliffe** (dissolved)
Nicole Sara Cunningham
Christopher K. Eppich
Kurt M. Kjelland
Laura Elizabeth Muschamp
Paul A. Rose

January 13, 2015

s/Daniel W. McDonald
Daniel W. McDonald

*Attorney for Defendants-Appellants*
*Rudolph Technologies, Inc., et al.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. vii

STATEMENT OF RELATED CASES ................................................. 1

JURISDICTIONAL STATEMENT ....................................................... 2

STATEMENT OF THE ISSUES............................................................. 3

STATEMENT OF THE CASE SETTING OUT THE FACTS
RELEVANT TO THE ISSUES ............................................................... 5

I.     Introduction.............................................................................. 5

II.    Background of the lawsuit and technology .................................. 8

III.   Applied Precision redesigned to avoid infringement soon after
       receiving ITC's infringement contentions................................. 10

IV.    Summary of the district court proceedings................................ 13

       A.    Rudolph never contested its pre-2007 PRVX products
             made contact in the first state, resulting in an adverse
             summary judgment of infringement in 2009...................... 13

       B.    The jury found no literal infringement for the ProbeWoRx
             and redesigned PRVX but found infringement under the
             doctrine of equivalents ...................................................... 15

       C.    The district court denied Rudolph's post-trial motions, found
             the case exceptional, awarded fees, and issued a broad
             injunction ......................................................................... 20

             1.    The district court erroneously denied Rudolph's post-
                   trial motions regarding prosecution history estoppel and
                   willful infringement ................................................... 20

2.      The district court awarded fees based on the later-reversed findings of willful infringement and trial testimony of Mr. Seubert related to his previously-disclosed testing ............................................................21

3.      The court issued a broad injunction .........................24

V.     On appeal, this Court found that prosecution history estoppel applied as a matter of law, reversed infringement for the ProbeWoRx and PRVX, and remanded because the exceptional case finding was inextricably linked to the vacated willful infringement findings .................25

VI     On remand, the district court again found the case exceptional and reinstated its fee award, relying on its erroneous prior findings of misconduct without any serious new discussion ........................27

SUMMARY OF THE ARGUMENT .......................................................29

ARGUMENT ..........................................................................................31

I.      Standard of review .........................................................................31

II.     The district court erred as a matter of law and abused its discretion because it failed to consider the totality of the circumstances as required by *Octane* and the record as a whole does not support the exceptional case finding ...............................32

A.     The district court failed as a matter of law to consider the totality of the circumstances absent willfulness as required by Octane and this Court's remand ..........................................................32

1.      The district court erred as a matter of law by failing to consider the totality of the *current* circumstances ....................33

2.      The district court failed to acknowledge that the reversal of infringement and willfulness meant that the evidence it relied on to show bad faith actually showed Rudolph's good faith ................................................................................34

3.      The district court did not consider any facts unfavorable to ITC or the factors pertinent to the totality-of-the-circumstances analysis ............................................................39

iv

B.  The district court abused its discretion by finding the case exceptional based on conclusory findings unsupported in the record as corrected on the first appeal ..................................................41

1.  Mr. Seubert's trial testimony does not support the district court's conclusion that Rudolph "hid its infringement for years." .........................................................................................43
2.  The district court's allegation that Rudolph "provided false discovery responses" is wholly unsupported ...........................45
3.  The district court's conclusion that Rudolph "filed summary judgment papers even though it knew its product infringed" also is unsupported ..................................................46
4.  Rudolph's patent ownership issue was legitimate and does not support an exceptional case finding ....................................49
5.  Rudolph's legitimate opposition to the broad scope of the injunction was not a "semantic game." .....................................50

III.  The district court erred as a matter of law in failing to separately find the fee award justified or relate it to the alleged misconduct, and abused its discretion by awarding fees for the whole case ...........................52

A.  The district court erred as a matter of law by failing to separately determine whether fees were appropriate .........................52

B.  The district court abused its discretion by failing to support its fee award with facts ..............................................................................54

C.  An award of fees on these facts would be excessive and an abuse of discretion .......................................................................................54

1.  Rudolph's alleged misconduct accounted for a small portion of the total fees .............................................................55
2.  ITC's own defective arguments inflated its fees ....................56

D.  The district court erred as a matter of law by failing to apportion the fee award based on the alleged misconduct ..................58

CONCLUSION .....................................................................................................63

ADDENDUM ........................................................................................................64

PROOF OF SERVICE ...........................................................................................65

CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a) .....................66

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Beckman Instr., Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989) ..................................................33, 56

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l Inc.*,
393 F. 3d 1378 (2005)...............................................................33

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)...................................................................32

*Cybor Corp. v. FAS Techs.*,
138 F.3d 1448 (Fed. Cir. 1998) (en banc) .........................................53

*Depuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ................................................48, 50

*Ditto v. McCurdy*,
510 F.3d 1070 (9th Cir. 2007) ........................................................36

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)....................................................................34

*Forest Labs., Inc. v. Abbott Labs.*,
339 F.3d 1324 (Fed. Cir. 2003) ........................................................33

*Frederick v. City of Portland*,
No. 95-35389, 1996 U.S. App. LEXIS 26700 (9th Cir. 1996)...........................44

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
897 F.2d 508 (Fed. Cir. 1990) ........................................................54

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744 (2014)..............................................................passim

*Hoechst Celanese Corp. v. BB Chems. Ltd.*,
Nos. 94-1362, -1370, 1995 U.S. App. LEXIS 24248 (Fed. Cir. Aug. 25,
1995) ....................................................................................59

*Hycor Corp. v. Schlueter Co.*,
    740 F.2d 1529 (Fed. Cir. 1984) ........................................................54

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
    734 F.3d 1352 (Fed. Cir. 2013) .....................................................1, 8

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ........................................................61

*L.A. Gear v. Thom McAnShoe*,
    988 F.2d 1117,1128 (Fed. Cir. 1993) ................................................34

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
    445 F.3d 1348 (Fed. Cir. 2006) ........................................................61

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*,
    730 F.2d 1452 (Fed. Cir. 1984) ...........................................41, 58, 59

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 1997) ........................................................39

*National Presto Indus. v. West Bend Co.*,
    76 F.3d 1185 (Fed. Cir. 1996) ..........................................................53

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014).............................................................passim

*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987) ...........................................41, 58, 59

*Poly-Am. v. GSE Lining Tech.*,
    383 F.3d 1303 (Fed. Cir. 2004) ........................................................49

*Precision Links Inc. v. USA Prods. Grp.*,
    527 Fed. Appx. 852 (Fed. Cir. June 7, 2013) ...................................54

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003) .....................................28, 31, 58, 59

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ....................................................38, 59

*Sensonics, Inc. v. Aerosonic Corp.*,
   81 F.3d 1566 (Fed. Cir. 1996) ......................................................39, 56

*Signtech USA, Ltd. v. Vutek, Inc.*,
   174 F.3d 1352 (Fed. Cir. 1999) ...................................................43, 44

*TechSearch LLC v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002) ........................................................43

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ........................................................61

*TVI Energy Corp. v. Blane*,
   806 F.2d 1057 (Fed. Cir. 1986) .............................................48, 50, 51

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharm., Inc.*,
   231 F.3d 1339 (2000)........................................................................33

## STATUTES

28 U.S.C. § 1295(a)(1).........................................................................2

28 U.S.C. § 1331 ..................................................................................2

28 U.S.C. § 1338(a) .............................................................................2

35 U.S.C. § 284..................................................................................21

35 U.S.C. § 285............................................................................passim

## OTHER AUTHORITIES

47 Am. Jur. 2d Judgments § 714 (2006).............................................36

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5(a), an appeal from this same civil action was previously before this Court.  On November 4, 2013, this Court decided *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, Nos. 2012-1593, -1618, 734 F.3d 1352 (Fed. Cir. 2013) (Rader, Clevenger, Moore).  The Court reversed the district court's findings of infringement under the doctrine of equivalents, willful infringement, and enhanced damages because prosecution history estoppel barred equivalents as a matter of law.  The Court also vacated the district court's exceptional case finding and award of attorney's fees and remanded for reconsideration.

Pursuant to Federal Circuit Rule 47.5(b), there is no case known to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.      In a prior appeal, this Court reversed the district court's findings of infringement and willfulness for two products, and vacated and remanded the exceptional case finding and fee award because they were intertwined with the vacated willful infringement findings.  The district court previously found Rudolph acted in bad faith based in large part on the reversed finding that Rudolph's redesign of its lone infringing product still infringed.  On remand, the district court found in one paragraph of conclusory analysis that "most" of its prior findings were unrelated to the reversed issues and that *Octane* had "lowered [the] standard" for exceptional case findings.  The court failed to acknowledge the many circumstances that changed on appeal and that supported denial of an exceptional case finding.  Did the district court err as a matter of law in failing to consider the totality of the *changed* circumstances and abuse its discretion in finding the case exceptional?

2.      An award of attorney's fees is not automatic even in an exceptional case.  When a request for attorney's fees is not based on willful infringement, the amount of fees must bear some relation to the extent of the alleged misconduct underpinning the exceptional case finding.  Here, the district court awarded fees for the entire case without either considering whether fees were appropriate at all

or considering the lack of a relationship between the alleged misconduct and the total fees requested.  Did the district court err as a matter of law and further abuse its discretion in awarding all of the claimed attorney's fees?

## STATEMENT OF THE CASE SETTING OUT
## THE FACTS RELEVANT TO THE ISSUES

**I.    Introduction.**

Rudolph Technologies, Inc. ("Rudolph") prevailed on most of the issues in this case.  None of its accused products infringed one asserted patent, and no products sold after 2007 infringed.  Rudolph successfully redesigned the only infringing product in 2007, soon after Integrated Technology Corp. ("ITC") specified its infringement allegations.  Even though the jury found the pre-redesign infringement as to this product was not willful, Rudolph paid a heavy price.  Rudolph paid $10,612,576.09 for its unintentional past infringement, an amount that accumulated due largely to ITC's decision to wait six years to sue.

That should have been the end of the case.  This is a non-willful and otherwise unexceptional case where an accused infringer redesigned its product to avoid further infringement and paid damages for the accidental infringement that occurred before it was aware of the patent.

But that was not the end.  ITC originally convinced the district court that Rudolph's redesign was not only an infringement, but in effect a fraud on the court, and the district court threw the book at Rudolph.  When viewed through the lens that ITC improperly urged, Rudolph was not an innocent and accidental infringer who promptly redesigned.  ITC instead argued, and the district court accepted, that Rudolph's redesign was a bad-faith "infinitesimal" change that

willfully infringed under the doctrine of equivalents. Viewed through that faulty lens, it is no surprise the district court relied on its original infringement and willfulness findings to find the case exceptional and award ITC treble damages, over three million dollars in attorney's fees, and an onerous injunction—everything ITC requested.

The appeal changed the circumstances dramatically. This Court remedied numerous errors, finding that prosecution history estoppel barred infringement by equivalents as a matter of law. When viewed through the new, undistorted lens, the reality became clear. Rudolph did not merely make an infinitesimal and immaterial change to pay mere lip service to ITC's patent and deceive the court. Quite the opposite. Rudolph did the *right* thing—it redesigned its one infringing product within months of receiving ITC's infringement allegations. Another product, originally found to willfully infringe under the doctrine of equivalents and cited by the court to support its findings of misconduct, never infringed at all. Instead of being a willful, ongoing infringer, Rudolph was merely an accidental infringer who stopped infringing promptly after ITC specified its infringement allegations.

Because of this dramatic change in the case, this Court vacated the exceptional case finding and fee award and remanded for reconsideration in view of the reversals of infringement and willful infringement. On remand, however,

the district court continued to view the case through the old, faulty lens.  It ignored the impact of this Court's reversal of all willfulness findings, treated the case as essentially unchanged, found the case exceptional, and again awarded over three million dollars in fees in one paragraph of conclusory analysis.

The district court erred as a matter of law and abused its discretion because it did not consider the dramatic change in the totality of the circumstances in evaluating whether the case was exceptional.  Instead, the court relied on its finding that *Octane* "lowered the bar for awarding fees under § 285."  This was an error of law.  Further, the court's finding of "misconduct" was based on conclusory analysis unsupported by the record.  This was an abuse of discretion.  Finally, the court failed to acknowledge that attorney's fees are not automatic and that when a case is found "exceptional" due to "misconduct" an award of fees must be tied to the alleged misconduct.  Instead, it awarded ITC all of its claimed fees without any analysis of whether fees were appropriate or whether that amount was properly apportioned.  The purported misconduct related to one of many issues resolved on summary judgment two years before trial and accounted for a small fraction of the total fees in the case.  The award of fees for the whole case also was an error of law and abuse of discretion.

This Court's remand should have led to a fresh review of the totality of the circumstances and a denial of the request for exceptional case finding and fees.

When this case is viewed through the proper lens of Rudolph's prompt, non-infringing redesign and the reversed willful infringement findings, it is clear that this case is not exceptional. The district court failed to apply proper legal standards, Rudolph did not engage in litigation misconduct, and the district court's findings to the contrary are in error so manifest as to be an abuse of discretion. The exceptional case finding and attorney fee award should be reversed.

## II.    Background of the lawsuit and technology.

The technology and history of the case is set forth in the 2013 decision by this Court. *See Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352 (Fed. Cir. 2013). ITC sued Applied Precision (later acquired by Rudolph) on September 11, 2006, for infringing two patents—U.S. Patent No. 5,657,394 ("the '394 patent") and U.S. Patent No. 6,118,894 ("the '894 patent"). (A149; A152; A154) ITC filed suit one day short of six years after the '894 patent issued, maximizing its potential claim for damages. (*Id.*) Applied Precision was not aware of the '894 patent prior to being sued. (A9478:4-6; A9720:2-21)

This case relates to inspection equipment for probe cards, which are devices that are used to test semiconductor chips. Probe cards contain hundreds or thousands of tiny wires (known as probes) that contact the conductive bonding pads located on each chip. (A1904:7-05:9; A8715:13-18; A9096:9-15) The probe tips are driven in contact with the pads to create a reliable electrical contact,

8

leaving a "scrub mark" on the bonding pad in the process.  (A8715:19-21; A9098:10-24; A9666:11-68:5; A9671:25-72:11; A16669)  Probe tips bend and misalign over time, which can lead to false readings or damage to the chips during testing.  (A9096:20-98:3; A16385; A8716:1-9; A9920:17-24)  Thus inspection systems for the probe cards are needed—in essence, testers for the testers.

Applied Precision was and remains (through Rudolph) a leader in the semiconductor field and the market leader in probe card inspection.  Long before ITC entered the market, Applied Precision was working on its own technology, and in 1988 filed U.S. Patent No. 4,918,374, which disclosed a system that electrically inspected the alignment of the probes on a probe card.  (A220)  Applied Precision also obtained U.S. Patent No. 7,634,128 as it continued to develop the technology.  (A16367; A16382)

The '894 patent claims a system for measuring the location of the probes on a probe card through imaging probes as they are driven against a window of a testing system to mimic the creation of actual scrub marks on the bond pad of a chip.  (A183-84)  Of critical importance, all asserted claims of the '894 patent require that the images of the probe tip be obtained "in a first state where the probe tip is driven in contact with said window with a first force, and in a second state where said probe tip is driven in contact with said window with a second force . . . ."  (*Id.*)  This critical claim limitation arose from a narrowing amendment to the

claims, added in response to rejections of the pre-amendment claims as indefinite and invalid in view of the prior art. (A18256; A18258-60; *see also* A2198-99; A4544-46; A6113-18; A7093-96; A7313-22)

### III. Applied Precision redesigned to avoid infringement soon after receiving ITC's infringement contentions.

ITC served its infringement contentions on April 2, 2007—about eight months after it filed suit. (A271) ITC accused seven Applied Precision products of infringing, including various PRVX models and the ProbeWoRx product. (A9473:21-74:11; A9478:4-10) ITC asserted that the probe tips in Applied Precision's products were driven into contact with a viewing window with a first force in the first state as required by claim 1 of the '894 patent. (*Id.*) Claim 1 also contained a means-plus-function element and other elements. (A183; A17799-80)

Applied Precision's then-president, Ron Seubert, testified that he believed ITC's infringement contentions were wrong because the PRVX products were designed *not* to make any contact with the window in the first state. (A9400:9-14; A9401:14-21; A9430:12-31:5; A9473:4-11; A9829:2-4) Instead of requiring that the tips be driven into physical contact, the PRVX products were designed to take images without contact in the first state to ensure repeatability and consistency of measurements. (*Id.*) The ProbeWoRx product similarly took images of the probe tip without contact in the first state using 3D cameras. (A15919; A9473:6-16; A9690:1-22; A9692:13-17)

10

In 2007, Mr. Seubert tested the PRVX products, expecting to confirm that the probe tips did not contact the window in the first state.  (A9424:23-25:19; A9473:4-11; A9474:4-75:23)  When he tested several PRVX products, however, Mr. Seubert found that sometimes the probe tip inadvertently made contact in the first state due to manufacturing tolerances.  (A9474:4-75:23; A9822:3-23)  Following this discovery, Applied Precision modified the software in the PRVX products so that the probe tips never touched the window in the first state of image capture.  (A9424:15-25:19; A9431:2-32:25; A9726:1-32:11; A9992:24-93:3; A12568-69)  This change ensured that when the first image of a probe tip was taken, that probe tip would not be driven in contact with the window, even accounting for tolerances.  (A9731:9-19; A9724:10-32:11; A9446:3-47:8; A9879:13-80:9)

The redesigned PRVX was introduced on August 15, 2007, about four months after ITC's infringement disclosure.  (A9730:12-31:5; A9992:24-93:1; A271)  The jury confirmed that the ProbeWoRx and redesigned PRVX products did not literally meet the first state "contact" element, findings that were affirmed on appeal.  (A17763-65; A18263)

Mr. Seubert was deposed one day after Applied Precision's redesign.  (A7916:102:10-17; A7917:107:4-7)  At his August 16, 2007 deposition, he disclosed his testing and that Applied Precision had redesigned the PRVX products

11

the day before to "make sure . . . that we do not touch the window" in the first

state:

```
 4        Q.  All right.  You told me that
 5    a change was implemented in your PVRX3
 6    machine yesterday.
 7        A.  Correct.
 8        Q.  What was that change?
 9        A.  It, um -- it was to make
10    sure and be very clear that we do not
11    touch the window during the first --
12    when we first look at the tip.  So from
13    the electrical tip to make sure that we
14    do not touch the window.
15        Q.  Okay.  And how do you make
16    sure you don't touch the window?
17        A.  We add up our manufacturing
18    tolerances, we add up our system
19    tolerances, and there was a safety
20    factor on top of that.
```

(A7917:107:4-20; A7913)

Rudolph purchased the semiconductor division of Applied Precision,

including its probe card analyzer products, on December 18, 2007.  (A2181;

A2214)  Mr. Seubert left the semiconductor division of Applied Precision right

after Rudolph's acquisition in December 2007.  (A9454:1-23)  For the remainder

of the brief Applied Precision and Rudolph will be collectively referred to as

"Rudolph."

**IV.    Summary of the district court proceedings.**

      **A.    Rudolph never contested its pre-2007 PRVX products made contact in the first state, resulting in an adverse summary judgment of infringement in 2009.**

The parties cross-moved for summary judgment on February 11, 2009. (A2182; A3299; A17774)  ITC moved for summary judgment that the pre-2007 PRVX, redesigned PRVX, and ProbeWoRx products literally infringed.  (A3299-300)  In opposition, Rudolph contended that the ProbeWoRx and redesigned PRVX products did not meet the first state contact element.  (A3688-91; A3694-95)  Rudolph *never* disputed, however, that the *pre*-2007 PRVX product captured images with contact in the first state, consistent with Mr. Seubert's August 2007 deposition testimony.  (A3692-96; A7917:107:4-20; *see also* A3311; A17778; A3605-06; A3610)  Instead of disputing the first state contact element for the pre-2007 PRVX products, Rudolph argued these products did not meet *other* claim elements based on the analysis of its technical expert, Dr. Paul K. Wright, Ph.D.— a professor at the University of California, Berkeley.  (A3692-96; A1421; *see also* A1426-27; A2199-201)

      Specifically, Dr. Wright explained that the PRVX products did not meet the means-plus-function element of the relevant claims because they lacked "a computerized means with software means . . . for determining the location and length of the scrub mark based on said positions."  (A3608; A3609-10)  Based on

13

Dr. Wright's analysis, Rudolph argued that the pre-2007 PRVX systems did not infringe the '894 patent because they lacked "structure or software for determining the location of a scrub mark" as required by the means-plus-function element of the relevant claims.  (A3693; A3692-96; A2199-201)  Rudolph explained that summary judgment was inappropriate because the PRVX systems determined location in a substantially different manner than the manner covered by the means-plus-function element.  (*Id.*)

Despite these explanations, the court granted ITC's summary judgment of literal infringement for the pre-2007 PRVX systems.  (A17780)  In its summary judgment order, the district court acknowledged and relied upon Rudolph's concession that the pre-2007 PRVX products met the first state "contact" element:

| | |
|---|---|
| 4 | **B. Third Element: Probe Tip Contact With The Window** |
| 5 |     **1. The Pre-2007 PRVX System Provides For Probe Tip Contact With The** |
| 6 |     **Window** |
| 7 |     Rudolph does not dispute that the pre-2007 PRVX system satisfies the third element |
| 8 | of the claim regarding the system obtaining an image through the window when the probe |
| 9 | tip is in contact with the window.  Thus, this element is satisfied for the pre-2007 PRVX |
| 10 | system. |

(A17778)  The district court found that the pre-2007 PRVX products met the means-plus-function element and found that Rudolph did not present a "serious defense" to infringement of these products.  (A17776-80; A17785)  The district

court, however, denied ITC's summary judgment as to literal infringement by the ProbeWoRx and redesigned PRVX products in view of fact issues.  (A17780)

Rudolph sought summary judgment on the basis that prosecution history estoppel barred infringement of the first state contact element of the '894 patent under the doctrine of equivalents.  (A2198-202)  ITC amended claim 1 during prosecution to add the language "in a first state where said probe tip is driven in contact with said window with a first force."  (A10648-49)  ITC opposed, arguing estoppel did not apply because the amendment was not narrowing.  (A3675-76)  The court denied Rudolph's motion without deciding whether the amendment was narrowing.  (17778-80)  Rudolph also sought summary judgment that none of its products infringed the second asserted patent, the '394 patent.  (A2189-97)  The court granted that motion.  (A17784)

## B.    The jury found no literal infringement for the ProbeWoRx and redesigned PRVX but found infringement under the doctrine of equivalents.

The only infringement dispute at trial was whether the first of the two images of the probe in the ProbeWoRx and redesigned PRVX products was taken in the claimed "first state where [the] probe tip is driven in contact with [the] window with a first force" either literally or under the doctrine of equivalents.  (A7219; A7223; A6809; A6895; A10373:17-23; A10382:8-12; A10405:12-23)

The evidence at trial demonstrated that the probe tips of the accused ProbeWoRx and redesigned PRVX products did not touch the window during the first image capture and thus did not literally infringe. (A9879:13-80:23; A9894:24-95:23; A9903:1-23; *see also* A9724:6-16; A9728:11-22; A9740:2-10; A9989:24-90:8) ITC disputed this fact, relying on vague language from user manuals and the testimony of its expert, who neither inspected the accused machines nor understood the language used to program the devices. (A9108:20-09:7; A9109:5-7; A9125:19-23; A9165:1-9; A9209:11-10:6) The jury agreed with Rudolph, finding no literal infringement. (A17763-65)

ITC alternatively argued that the accused products infringed under the doctrine of equivalents. In support of this assertion, ITC relied on the small distance between the glass plate and the probe tip, arguing that Rudolph admitted this space was an "infinitesimal" distance and thus an infringement by equivalence. (A10415:17-22; A10421:4-6) Persuaded that a probe tip separated from a glass plate is equivalent to a probe tip driven into contact with a glass plate, the jury found infringement under the doctrine of equivalents and that such infringement was willful. (A17763-65; A17768)

The jury also considered whether the pre-2007 PRVX literal infringement (found by the court) was willful. ITC relied on Mr. Seubert's testimony to try to prove willfulness as to this product. Mr. Seubert testified, consistent with his

deposition testimony, that his testing in 2007 revealed that some PRVX products

contacted the window in the first state due to manufacturing tolerances.  (A9474:4-

75:23; A7917:107:4-20)  During cross-examination, Mr. Seubert refused to agree

with ITC that the pre-2007 PRVX products infringed, noting that the first state

contact was unintentional and only occurred with some machines:

```
 1   BY MR. CAMPBELL:                                          11:00:45
 2   Q.   Mr. Schwartz -- I'm sorry.  Wrong one.
 3          Mr. Seubert, I understand that you believe that the
 4   systems up to August of 2007 included the concept of no touch.
 5   But will you agree that the Court has found that all of those   11:00:58
 6   systems sold, regardless of what they -- what you believe they
 7   had in them infringed the '894 patent?
 8   A.    You know, Your Honor, I'm not sure how we could say all
 9   systems.  Some systems, because of manufacturing tolerances,
10   would have made a touch when it wasn't intended.  And we        11:01:23
11   found --
```

(A9404:1-11)

     In the middle of his answer, the court interrupted Mr. Seubert and instructed

him that it had already found infringement for the pre-2007 PRVX products:

```
12              THE COURT:  Hold on.  I know how you're attempting to
13    be very careful in your answers.  But do you understand that
14    there has been a decision by the Court that there has been
15    infringement in certain respects?  And you can answer that        11:01:47
16    if -- if you can answer that yes or no, which seems to me to be
17    a simple question.  And then Mr. McDonald, I understand, is
18    going to assist you in what he believes is relevant and I will
19    decide on what your point of view was.
20              So can you answer that yes or no that there has been    11:02:07
21    a determination by this Court that in certain respects there
22    has been infringement?
23              THE WITNESS:  Thank you.
24              The answer is yes.
```

(A9404:12-24)

After being instructed that the court found the pre-2007 PRVX products to infringe, Mr. Seubert acknowledged that he determined in 2007 that some of the probe tips did make contact in the first state and thus the machine was, in counsel's words, "covered by the claims":

```
18    Q.  And you tested those and found out that why you didn't
19    realize that sometime in, like, April of 2007 you actually did
20    infringe?                                                         01:53:53
21    A.  What I found out was that in April of 2007 some of the
22    windows were higher than they were supposed to be.
23    Q.  And you determined that you inadvertently infringed so you
24    should then change?
25    A.  We determined that the machine was not operating like we       01:54:09
```

```
                        RON SEUBERT - Cross
1  wanted it to operate.                                        01:54:11
2  Q.   You determined that the machine actually was covered by
3  the claims in the patent; right?
4  A.   Yes.
5  Q.   And that was around April of 2007?                      01:54:21
6  A.   Yes.
```

(A9479:18-80:6)  Mr. Seubert was only asked about the first-state contact element. (*Id.*; A9404:1-11)  He was not asked about the means-plus-function element or any other claim elements.  (*Id.*)  Mr. Seubert's trial testimony came nearly four years after he left Rudolph.  (A9454:1-23)

ITC relied on Mr. Seubert's testimony in closing, when it argued that Rudolph "knew" the pre-2007 PRVX products infringed and that infringement was willful:

```
19        Subjective recklessness.  What's that mean?  Well,
20  the Court read to you that's a state of mind.  That means what
21  did Rudolph actually think about this.
22        Well, we've got a lot of this evidence.  They could
23  still acknowledge infringement.  We have Mr. Seubert up there.
24  He told you we know the PRVX3 systems infringe, but we didn't
25  tell anybody.  We knew the PRVX3 systems infringed.  We even
```

(A10440:19-25)  The jury rejected ITC's argument and found that the pre-2007 PRVX literal infringement was *not* willful.  (A17768)

The jury awarded lost profits of $7,684,047[1] for the pre-2007 PRVX products, $1,467,980 for the redesigned PRVX products, and $6,323,455 for ProbeWoRx product.  (A17765-68)

### C.     The district court denied Rudolph's post-trial motions, found the case exceptional, awarded fees, and issued a broad injunction.

#### 1.     The district court erroneously denied Rudolph's post-trial motions regarding prosecution history estoppel and willful infringement.

After trial, Rudolph moved for judgment as a matter of law, arguing that the doctrine of equivalents was not available to ITC because of prosecution history estoppel.  (A7313-22)  ITC opposed, faulting Rudolph for raising the prosecution history estoppel issue "*four times*."  (A8017 (emphasis in original))  Rudolph also sought judgment as a matter of law of no willful infringement, explaining its defenses—including legal defenses to infringement under the doctrine of equivalents—were objectively reasonable.  (A7329-34)  In addition, Rudolph

---

[1] Rudolph's damages expert opined that lost profits were unavailable for the pre-2007 PRVX products because the ProbeWoRx and successfully-redesigned PRVX products were available non-infringing alternatives.  (A10102:5-9)  The jury never considered this defense to lost profits because it erroneously found that these products infringed under the doctrine of equivalents.  Rudolph filed a Petition for a Writ of Certiorari challenging the award of damages for the pre-2007 PRVX products because the jury never considered the ProbeWoRx and redesigned PRVX products as non-infringing alternatives.  The Supreme Court called for a response from ITC but ultimately denied the Petition.  *See Rudolph Techs., Inc. v. Integrated Tech. Corp.*, 134 S. Ct. 2873 (2014).  Rudolph subsequently paid ITC its claimed damages of $7,684,047 for the pre-2007 PRVX products, plus interest, which ended up being $10,612,576.09.  (A18438)

objected to ITC's proposed injunction.  (A7975)  Rudolph also moved for a new trial on damages, arguing that lost profits were unavailable because there was evidence that co-plaintiff ITC Nevada was the actual owner of the '894 patent but did not manufacture any products.  (A7272-73)

On July 23, 2012, the district court denied Rudolph's post-trial motions, finding that "[t]he amendments ITC made during the patent application process were not 'narrowing amendments' as contemplated by the doctrine of prosecution history estoppel."  (A17739)  The district court adopted the jury's willfulness finding for the products found to infringe only under the doctrine of equivalents, providing no explanation as to why Rudolph's legal defenses to infringement under the doctrine of equivalents were not objectively reasonable.  (A17740-41)  The court also found that ITC owned the patent and denied Rudolph's motion for a new trial.  (A17744)

      2.    <u>The district court awarded fees based on the later-reversed findings of willful infringement and trial testimony of Mr. Seubert related to his previously-disclosed testing.</u>

ITC encouraged the court to rely on the willfulness finding for the ProbeWoRx and redesigned PRVX products to find the case exceptional and award fees, supporting its fee request by stating "the same factors . . . justifying enhanced damages under § 284 support finding a case exceptional under § 285."  (A8217-18)  The district court found the case exceptional and awarded fees in a cursory two-

paragraph analysis that relied on the willfulness findings and "Rudolph's conduct during this litigation." (A17751)

While the court's exceptional case determination and explanation for its original award of attorney's fees was cursory, it made more detailed findings when awarding treble damages for the ProbeWoRx and redesigned PRVX products. In its treble-damages analysis, the court stated that Rudolph's redesign of the PRVX effectively was a sham. (A17746-50) The court made many findings based on its erroneous belief—reversed on appeal—that the ProbeWoRx and redesigned PRVX products infringed the first state contact element under the doctrine of equivalents, including the following findings:

- "After learning that is [*sic*] products did infringe the '894 Patent, Rudolph made an 'infinitesimal' change in an apparent attempt to stop future infringement. There was no evidence how Rudolph concluded this change was sufficient to prevent future infringement and, in fact, it was unclear whether the change was even made to all of Rudolph's systems."

- "Rudolph subsequently made the absolute minimum and ineffective change necessary to avoid obvious infringement. The jury concluded that change was immaterial and the doctrine of equivalents applied."

- "Rudolph's conduct started many years ago and never stopped. The minuscule change made in an attempt to prevent future infringement did not do so."

- "Rudolph did not identify any *meaningful* remedial action it took after learning of the infringement. In fact, the evidence established precisely the opposite."

(A17747; A17749 (emphasis in original))

The court supported its erroneous belief that the redesign was inadequate with the trial testimony of Mr. Seubert. At trial, the jury rejected ITC's argument that Mr. Seubert's testimony established Rudolph's willful infringement for the pre-2007 PRVX. (A10440:19-25; A17768) The court, contrary to the jury, considered this testimony to mean Rudolph "had unmistakable knowledge of infringement" and acted in bad faith. (A17749) The court stated:

> 13    During his testimony, Mr. Seubert explained the pre-2007 PRVX System was
> 14  designed such that the probe tips would be an "infinitesimal" distance away from the glass
> 15  plates. (Doc. 489 at 128-29). In 2007, approximately seven months after this infringement
> 16  suit was filed, Mr. Seubert tested the plates used in the pre-2007 PRVX System. In doing
> 17  so, Mr. Seubert learned the system was "not operating like [Applied Precision] wanted it to
> 18  operate." (Doc. 489 at 179). This was an understatement. Under further questioning, Mr.
> 19  Seubert admitted the improper operation at issue was that the pre-2007 PRVX System was
> 20  allowing the probe tips to touch the glass plate.
>
> 21    Q. You determined that the machine actually was covered by the claims
>     in the patent; right?
> 22
>     [Mr. Seubert]: Yes.
> 23
>     Q. And that was around April of 2007?
> 24
>     [Mr. Seubert]: Yes.
> 25
> 26  (Doc. 489 at 179). In short, as of April 2007 the President and CEO of Applied Precision
> 27  knew the pre-2007 PRVX System was practicing the '894 Patent.

(A17736)

This quote omitted the prior testimony and instructions to Mr. Seubert from the court that the product infringed, and did not acknowledge that Mr. Seubert was never asked about any of the other elements of claim 1. (*Id.*; *see also* A9404:12-

24; A9479:18-80:06)  Although the district court characterized Mr. Seubert's testimony as "a startling admission," that testimony was consistent with Mr. Seubert's 2007 deposition testimony.  (A17736; A7917:107:4-20)  Rudolph never contested that the pre-2007 PRVX inadvertently made contact in the first state.  (A2199-200; A3692-96; A3311; A17778)

The district court found that ITC was entitled to treble damages for post-2007 sales and fees and instructed the parties to submit further briefing regarding the amount of fees.  (A17750-51; A17757)  ITC then sent Rudolph a letter seeking to stipulate to the amount of fees.  In response, Rudolph agreed that ITC's claimed $3,252,228.50 in fees for the entire case was *reasonable* based on ITC's representation that this amount was, in fact, the amount of legal fees incurred by ITC (including a "billed" amount and a "contingent" amount).  (A18396.1-.3) However, Rudolph specifically reserved the right to contest ITC's *entitlement* to fees on appeal or otherwise as may be appropriate.  (A18396.1)

### 3.    The court issued a broad injunction.

The court also issued a broad injunction.  (A17756-57)  Like the other post-trial decisions, the injunction was tainted by the court's erroneous belief that Rudolph's redesign was insufficient to avoid infringement.  Indeed, the court again used Rudolph's redesign against it, finding that "Rudolph has been unwilling to be forthright regarding how its machines operate and whether its machines are

24

practicing the claims at issue." (A17754) The court cited no evidence to support this statement other than the findings infected by the erroneous willful infringement findings.

The injunction prevented Rudolph from selling the products found to infringe and colorable imitations, but additionally enjoined sales of any *other* systems that "perform scrub or scrub testing" or "compare in any fashion the image of a probe made at a first position to the image of the same probe made at an overtravel position." (A17756) These provisions went well beyond the scope of the claims. The injunction required Rudolph to get advance approval from ITC or the Court before selling modified systems that performed these broad functions. (*Id.*)

After the court entered its judgment, Rudolph sought a stay of the injunction pending appeal. (A8513-14) The district court denied that motion. (A17772-73) On October 10, 2012, this Court granted Rudolph's request to stay the injunction as to the redesigned PRVX products and ProbeWoRx products. (A18219-21) The patent expired in June 2013, while the stay remained in effect.

**V.    On appeal, this Court found that prosecution history estoppel applied as a matter of law, reversed infringement for the ProbeWoRx and redesigned PRVX, and remanded because the exceptional case finding was inextricably linked to the vacated willful infringement findings.**

On appeal, this Court reversed the district court and held that the ProbeWoRx and redesigned PRVX products did not infringe under the doctrine of

equivalents because prosecution history estoppel barred equivalents as a matter of law.  (A18255; A18257-60)  This Court found that ITC amended the claims for patentability reasons, the amendment narrowed the claims, no exceptions to estoppel applied, and thus the ProbeWoRx and redesigned PRVX products did not infringe.  (A18257-63)

At oral argument before this Court, ITC *admitted* that its claim amendment to the '894 patent was "clearly" narrowing:

> **The Court: So clearly it is a narrowing amendment, because –**

> **Mr. Campbell: To that extent, yes, I will agree with that, Your Honor.**

(A18362:15:15-18 (emphasis added))  This admission came despite the fact ITC contended the amendment was *not* narrowing during summary judgment, at trial, in its post-trial briefing, and in its briefing to this Court.  (A3675-76; A6340-42; A8021-22; A18259-60)

Based on the finding that prosecution history estoppel barred infringement, this Court reversed the finding that the ProbeWoRx and redesigned PRVX products infringed under the doctrine of equivalents and vacated all damages and the willful infringement findings as to these products.  (A18255; A18263)  This Court also vacated the exceptional case determination and the corresponding award of fees and costs, finding it "inextricably" linked to the erroneous willfulness finding.  (A18264-65)  This Court remanded the case to the district court to

reconsider ITC's attorney's fees request absent willfulness.  (A18255)  This Court

also affirmed the findings of no literal infringement for the ProbeWoRx and

redesigned PRVX products.  (A18263)

## VI.    On remand, the district court again found the case exceptional and reinstated its fee award, relying on its erroneous prior findings of misconduct without any serious new discussion.

On remand, ITC renewed its motion for an exceptional case finding and

award of attorney's fees.  (A18316)  Despite the absence of willfulness and other

changed circumstances, ITC again sought all of its fees for the entire

case.  (A18326)  ITC argued that fees should be awarded because Mr. Seubert's

trial testimony showed Rudolph knew the pre-2007 PRVX products infringed and

that Rudolph never should have opposed summary judgment for those products.

(A18317-23)

Rudolph opposed, noting that an exceptional case analysis must take into

account the totality of circumstances, including the many issues Rudolph won and

the fact that ITC pursued legally and factually flawed theories of infringement.

(A18337-38)  Rudolph also showed that the overbroad injunction already cost it at

least $420,000 in lost sales and $169,911 in lost service and upgrade revenue.

(A18349.2-.3; A18349.5-.6)  Rudolph explained it reasonably opposed summary

judgment for the pre-2007 PRVX based on its technical expert's analysis that the

pre-2007 PRVX products lacked claim elements other than the first-state contact

27

element.  (A18340)  Rudolph noted that Mr. Seubert's testimony did not establish

Rudolph's knowledge of infringement of any claim at least because it was only

directed to a single element.  (A18335; A18339-40)  Rudolph explained that only a

small fraction of ITC's claimed fees could have gone to the issue of pre-2007

PRVX infringement, so an award of fees for the entire case based on Mr. Seubert's

testimony would be legally erroneous under *Rambus Inc. v. Infineon Techs. AG*,

318 F.3d 1081, 1106 (Fed. Cir. 2003).  (A18347-48)

After briefing was completed, the Supreme Court decided *Octane Fitness,*

*LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and *Highmark Inc. v.*

*Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014).  The district court ordered

further briefing from each party addressing the impact of *Octane* on the pending

fee motion.  (A18397)  In its brief, Rudolph again pointed out that fees were not

appropriate under the totality of the circumstances.  (A18401-04)

The district court then found the case exceptional and awarded ITC all its

claimed fees for the entire case—$3,252,228.50.  (A71-73)  In a short decision

containing one paragraph of conclusory analysis, the Court found that "*most*" facts

supporting the *original* fee award had "*no connection*" to the vacated willfulness

finding.  (A72 (emphasis added))  The court accepted ITC's argument that *Octane*

"significantly lower[ed] the bar for awarding attorneys' fees under 35 U.S.C.

§285," stating "[i]n light of this lowered standard, ITC is entitled to an award of fees." (A18411; A71)

The court did not acknowledge that the facts supporting its previous exceptional case finding had changed—for example, that Rudolph *successfully* redesigned its product in good faith to avoid infringement and that Rudolph *stopped* selling any infringing product soon after being sued. The district court's analysis is found in one paragraph. (A72) Rudolph appealed.

## SUMMARY OF THE ARGUMENT

The district court erred as a matter of law and abused its discretion in finding this case exceptional and awarding fees on remand. The Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* requires district courts to consider the "totality of the circumstances" when making an exceptional case determination. 134 S. Ct. at 1756. Here, the district court failed to consider the dramatic change in the totality of the circumstances post-appeal, including the reversal of the infringement and willful infringement findings. Nor did the district court acknowledge that Rudolph redesigned its only infringing product almost immediately after ITC specified its infringement contentions to entirely avoid infringement. Instead, the district court continued to view the case through its prior error-tainted lens and found that the case was "essentially unchanged." In one paragraph of conclusory analysis, the court found that "most" of its prior

findings were unrelated to the reversed willful infringement finding and that *Octane* had "lowered [the] standard" for exceptional case findings. This is legal error.

The district court's exceptional case finding is also an abuse of discretion because none of its purported findings are supported by the evidence. The court said its exceptional case finding was essentially supported by three things: (1) Rudolph disputed that the pre-2007 PRVX infringed on summary judgment, despite Ron Seubert's trial testimony regarding that product; (2) Rudolph presented a theory regarding ITC's ownership of the patent; and (3) Rudolph opposed the injunction. (A72) When the record is considered, however, it shows that: (1) Rudolph reasonably opposed summary judgment as to the pre-2007 PRVX products based on legal defenses supported by expert analysis; (2) Rudolph presented a theory regarding patent ownership that had a sound factual basis and was relevant to ITC's ability to claim lost profits damages; and (3) Rudolph properly challenged an overbroad injunction that was later stayed by this Court. It is an abuse of discretion to find an exceptional case on this record.

Finally, the district court erred as a matter of law and abused its discretion by awarding fees for the *entire* case. The court must separately decide whether to award fees even if it finds the case is exceptional. Moreover, the amount of fees awarded must "bear some relation" to the misconduct when the award is based

solely on misconduct. *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106

(Fed. Cir. 2003). The district court ignored these requirements here and failed to

apportion the fee award. The district court's award of fees for the entire case bears

*no relation* to the purported misconduct. The court even awarded fees for the part

of the case that continued for two years through a jury trial *after* the pre-2007

PRVX was found to infringe on summary judgment. The fees ITC incurred at least

for that substantial part of the case had nothing to do with Rudolph's purported

misconduct. Neither ITC nor the court below related the fee award to the asserted

grounds of misconduct. This is an error of law. Further, an award of any fees

based on this record is an abuse of discretion.

The exceptional case finding and fee award should be reversed.

## ARGUMENT

### I.    Standard of review.

A district court's exceptional case finding and award of attorney's fees under

35 U.S.C. § 285 is reviewed for an abuse of discretion. *Highmark Inc. v. Allcare*

*Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748-49 (2014). The abuse of discretion

standard "does not preclude an appellate court's correction of a district court's

legal or factual error" because "'[a] district court would necessarily abuse its

discretion if it based its ruling on an erroneous view of the law or a clearly

erroneous assessment of the evidence.'" *Id.* at 1748 n.2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

**II.    The district court erred as a matter of law and abused its discretion because it failed to consider the totality of the circumstances as required by *Octane* and the record as a whole does not support the exceptional case finding.**

The district court failed to consider the totality of the circumstances as required by *Octane*.  This was legal error.  Additionally, the district court's stated reasons for finding the case exceptional are wholly unsupported.  It is an abuse of discretion to find a case exceptional on this record.  The exceptional case finding should be reversed.

**A.    The district court failed as a matter of law to consider the totality of the circumstances absent willfulness as required by *Octane* and this Court's remand.**

A court must consider the totality of the circumstances when determining whether a case is exceptional under 35 U.S.C. § 285.  *Octane*, 134 S. Ct. at 1756. Here, the court improperly relied on its previous and defective exceptional case finding and failed to consider the dramatic change in the totality of the circumstances post-appeal.  Rudolph went from a willful infringer that lost on most issues to an innocent infringer that prevailed on most issues.  The failure to consider the totality of the circumstances post-appeal is error as a matter of law. The exceptional case finding should be reversed.

1.    <u>The district court erred as a matter of law by failing to consider the totality of the *current* circumstances.</u>

An exceptional case finding is not the norm.  In *Octane*, the Supreme Court explained that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  134 S. Ct. at 1756.  The Court noted that "exceptional" means "uncommon," "rare," or "not ordinary."  *Id.*; *see also Forest Labs., Inc. v. Abbott Labs*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("[I]t is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits. Indeed, we have recognized that § 285 is an exception to the American Rule . . . .") (internal citation omitted); *Beckman Instr., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (explaining that when willfulness is not present, fees are awarded solely to prevent gross injustice).

The Supreme Court held in *Octane* that district courts should consider "the totality of the circumstances."  134 S. Ct. at 1756.  The Court overruled *Brooks Furniture* and returned to the pre-*Brooks Furniture* approach in which "the Federal Circuit, like the regional circuits before it, instructed district courts to consider the totality of the circumstances when making fee determinations under § 285."  *Id.* at 1754 (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l Inc.*, 393 F. 3d 1378 (2005)); *cf. Yamanouchi Pharm. Co., Ltd. v. Danbury Pharm., Inc.*, 231 F.3d 1339,

1347 (2000) ("In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances"); *L.A. Gear v. Thom McAnShoe*, 988 F.2d 1117,1128 (Fed. Cir. 1993) (holding that the entirety of the litigation circumstances should be considered). The factors relevant to the totality of the circumstances include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Contrary to ITC's representations in its briefing below, *Octane* did not "significantly lower[] the bar" for finding a case exceptional or "widen[] the scope of misconduct sanctionable under § 285." (A18411-12) The district court overestimated the impact of *Octane* at ITC's urging, finding this case exceptional "[i]n light of this lowered standard." (A71) To the contrary, *Octane* did not lower the standard for awarding attorney's fees, particularly in cases like this where infringement was not willful. Indeed, *Octane* reiterated that exceptional cases remain "uncommon," "rare," and "not ordinary." *Id.* at 1756.

Although the opinion below cites the "totality of the circumstances" standard, it fails to apply it. (A71-73) Instead, the district court provided a cursory analysis of a fraction of the circumstances it erroneously thought favored a fee

award and did not consider any of the circumstances that changed in Rudolph's

favor post-appeal.  Proper consideration of the totality of circumstances shows that

the case is not exceptional.  The district court's improper "lowering of the bar" for

a fee award and failure to consider the totality of the circumstances under *Octane*

is legal error.

>    2.    <u>The district court failed to acknowledge that the reversal of
>          infringement and willfulness meant that the evidence it relied
>          on to show bad faith actually showed Rudolph's good faith.</u>

The post-appeal circumstances show that ITC's victory was not exceptional.

ITC lost every literal, equivalents, and willful infringement issue it pursued at an

expensive trial and on appeal.  None of the factors listed in *Octane*—frivolousness,

motivation, objective unreasonableness, compensation, or deterrence—favor a fee

award under the current circumstances of this case.  *Id.* at 1756 n.6.  When

properly considered in light of this Court's reversal of infringement and

willfulness, the totality of the circumstances include:

- Rudolph redesigned the PRVX products to eliminate infringement mere months after receiving ITC's infringement contentions;

- Rudolph promptly disclosed both the damaging facts regarding the operation of the pre-2007 PRVX and the redesign;

- The jury found, and ITC did not dispute on appeal, that the infringement for the pre-2007 PRVX products (the only products that infringed) was not willful;

- This Court reversed the findings of infringement under the doctrine of equivalents and reversed all damages for the ProbeWoRx and redesigned PRVX products;

- This Court affirmed the findings of no literal infringement for the ProbeWoRx and redesigned PRVX products;

- This Court reversed the finding of willful infringement and vacated the exceptional case finding;

- This Court vacated the award of enhanced damages;

- Rudolph already paid ITC $10,612,576.09 for infringement of the pre-2007 PRVX and lost revenue due to an overbroad injunction.

(A9731:9-19; A9724:10-32:11; A9446:03-47:08; A9879:13-80:9; A7917:107:4-20; A17768; A18255; A18257-65; A18438; A18349.2-.3; A18349.5-.6)

The decision of this Court *vacating* the first exceptional case finding and treble damages award shows that the district court should have reviewed the totality of the circumstances on remand.  (A18264-65)  *See Ditto v. McCurdy*, 510 F.3d 1070, 1077 n.4 (9th Cir. 2007) ("The vacated judgment lacks force or effect and places the parties in the position they occupied before entry of the judgment." (quoting 47 Am. Jur. 2d Judgments § 714 (2006)).  When the district court originally awarded fees, Rudolph was an adjudicated willful infringer.  In support of its first exceptional case finding, the district court stated "Rudolph's conduct during this litigation and the willfulness finding are ample support for finding this case exceptional."  (A17751)  However, the basis for the fee award no longer

existed after this Court reversed the findings of infringement and all damages as to

the ProbeWoRx and redesigned PRVX products, reversed the willfulness finding,

and vacated the exceptional case finding and fee award.  (A18255; A18263-65)

On remand, fresh analysis of the circumstances of the case was required.

Fresh analysis shows that the appeal created a reversal of fortune.  The

district court previously criticized Rudolph's redesign at ITC's urging because the

redesigned systems were only "infinitesimal[ly]" different from the claims.

(A17747; A7778)  The court initially found that Rudolph's redesign was an

"absolute minimum and ineffective change" and pointed to the redesign as

evidence of Rudolph's bad faith.  (A17749; *see also* A17746-50)  Indeed, the court

initially stated:

> Rudolph did not identify any *meaningful* remedial action it took after
> learning of the infringement. In fact, the evidence established
> *precisely the opposite*.

(A17749 (first emphasis in original))  The court at least implicitly understood that

"*meaningful* remedial action" would have been compelling evidence of Rudolph's

good faith.  (*Id.*)  The appeal showed Rudolph's remedial action was not only

meaningful, but fully effective in ending infringement—in the court's words,

"precisely the opposite" of what it found when it awarded fees initially.

In direct contradiction to the court's initial findings based on its errors

regarding the doctrine of equivalents, there is no longer a dispute that (1) Rudolph

modified the PRVX products following Mr. Seubert's testing in 2007; (2) the

redesign was meaningful; and (3) Rudolph's infringement stopped as a result.

(A7917:107:4-20; A9446:03-47:08; A18257-63)  The reversal of infringement on

appeal demonstrated Rudolph's clear *good faith* in changing its only infringing

product to a non-infringing product shortly after receiving ITC's infringement

contentions.  The district court should have reconsidered the "meaningful" non-

infringing redesign as evidence that would defeat a fee award.  *See Read Corp. v.*

*Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992) (refusing to award fees where,

among other things, design changes were implemented).

Without explanation, the district court's opinion fails to acknowledge this

dramatic change in the totality of the circumstances.  Indeed, the district court did

not mention, let alone analyze, any of the post-appeal facts newly favorable to

Rudolph or facts newly unfavorable to ITC.  (A71-73)  The court merely

proceeded as if nothing important had changed, stating:

> 1   The Court previously found this case exceptional under the now-overruled Federal
> 2   Circuit approach. (Doc. 546).  That ruling was based on Rudolph's behavior during litigation
> 3   and the jury's finding of wilfulness.  On appeal, the wilfulness finding was reversed and the
> 4   case remanded for a determination whether an award of attorneys' fees was still merited.
> 5   (Doc. 618-1).  Having reviewed the parties' voluminous filings throughout this case, an
> 6   award of fees is still appropriate because most of the underlying facts supporting an award
> 7   of attorneys' fees have no connection to the now-vacated wilfulness finding.

(A72)

The court's conclusory assessment fails to consider the totality of the post-appeal circumstances as required by *Octane*.  Indeed, the decision does not even purport to base its exceptional case finding on a fresh analysis of the new circumstances.  To the contrary, it embraces heavy reliance on prior findings that, as shown above, are not only without support but in some cases "precisely the opposite" of the circumstances post-appeal.  This was an error of law and an abuse of discretion.

> 3.    <u>The district court did not consider any facts unfavorable to ITC or the factors pertinent to the totality-of-the-circumstances analysis.</u>

As this Court's pre-*Brooks Furniture* cases make clear, the conduct of *both* parties is relevant to the totality of the circumstances.  *See, e.g.*, *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997) (affirming no exceptional case finding and award of fees where both parties participated in misconduct); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996) (both parties' conduct may be taken into account when determining whether a case is exceptional under § 285).  Here, however, the district court's cursory analysis did not consider *any* facts unfavorable to ITC.  For example:

- ITC unnecessarily prolonged the case by claiming equivalents infringement when there was no legal support for an equivalents claim;

- When pressed by this Court, ITC acknowledged for the first time at oral argument that the amendment was narrowing, undermining its entire equivalents case;

- ITC unnecessarily prolonged the case by claiming literal infringement for the ProbeWoRx and redesigned PRVX products without factual support for this claim;

- ITC secured a wrongfully-entered injunction that impeded Rudolph's ability to serve its customers and exposed Rudolph's service reputation to harm;

- Rudolph lost sales while the wrongfully-entered injunction was in place.

(A18257-63; A18362:15:15-18; A9879:13-80:23; A9894:24-95:23; A9903:1-24; A17752-57; A18219-21; A18349.2-.3; A18349.5-.6)

Additionally, the district court failed to acknowledge that ITC received over ten million dollars in compensation, based virtually entirely on pre-lawsuit sales of a product that was redesigned soon after suit. *Octane* encourages that all circumstances be considered, including considerations of compensation and deterrence. *See* 134 S. Ct. at 1756 n.6. ITC has been fully compensated without the need for a further fee award. Nor did the court acknowledge that deterrence would not be served by a fee award, as there is no willfulness. The district court did not even mention the factors pertinent to the totality analysis that are listed in *Octane.* (A71-72)

The exceptional case finding should be reversed because the district court erred as a matter of law by failing to consider the totality of the circumstances or

recognize that the post-appeal circumstances show this case is not exceptional.  *See*

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452,

1458 (Fed. Cir. 1984) ("However salutary, the rules governing review do not

envision an appellate court shirking its duty to reverse an appealed judgment that is

clearly based on legal error and unsupported by evidence in the record."); *see also*

*Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1565-66 (Fed. Cir. 1987) (A

party may "obtain reversal without remand" when "a proper application of the law

to unassailable findings compels reversal" or when the findings underlying the

district court's legal conclusion "are clearly erroneous and that nothing of record

warrants a further exercise of the fact-finding function or indicates any possibility

that the appealed judgment might be sustained by such exercise.").

**B.**    **The district court abused its discretion by finding the case exceptional based on conclusory findings unsupported in the record as corrected on the first appeal.**

Not only was the district court's exceptional case finding an error of law, it

was also an abuse of discretion.  The district court's conclusory assessment of the

record was clearly erroneous.  *See Highmark*, 134 S. Ct. at 1748 n.2 ("A district

would necessarily abuse its discretion if it based its ruling on . . . a clearly

erroneous assessment of the evidence.").  The court's one-paragraph explanation of

its exceptional case finding—itself an abuse of discretion—is wholly unsupported

by facts or analysis.  The entirety of the district court's analysis of the record is as follows:

| | |
|---|---|
| 8 | In brief, the record establishes the following: Rudolph hid its infringement for years, |
| 9 | provided false discovery responses, filed summary judgment papers even though it knew its |
| 10 | product infringed, argued a never fully explained theory that ITC did not own the underlying |
| 11 | patent, and during and after trial played semantic games regarding what its machines did and |
| 12 | what functions were important to it and its customers.  (Doc. 546 at 20 n.9) (explaining |
| 13 | Rudolph refused "to be forthright regarding how its machines operate" and the terms of |
| 14 | injunction were an attempt to prevent "Rudolph from simply redefining certain terms in such |
| 15 | a manner so it can claim its machines are outside literal coverage").  The striking weakness |
| 16 | of Rudolph's position regarding its pre-2007 PRVX machines, as well as the unreasonable |
| 17 | manner in which it litigated the case through trial and post-trial motions, satisfy the Supreme |
| 18 | Court's standard under § 285 for awarding fees.  In fact, *either* the substantive strength of |
| 19 | many of Rudolph's litigating positions or the "unreasonable manner in which the case was |
| 20 | litigated" make this case stand out from others.  An award of fees is appropriate.[1]  The parties |
| 21 | previously stipulated to the amount of fees.  (Doc. 550-1 at 4). |

(A72)

The district court adopted ITC's arguments regarding Rudolph's alleged misconduct without analyzing them to determine if they were correct or supported by the facts.  The record, however, shows that Rudolph's conduct and behavior throughout the case was in good faith and wholly *un*exceptional.  Each of the district court's conclusory findings is unsupported.

1.    <u>Mr. Seubert's trial testimony does not support the district
court's conclusion that Rudolph "hid its infringement for
years."</u>

The district court asserted that Rudolph "hid its infringement for years."

(A72)  This conclusion is unsupported by analysis or the record.  The court points

to no facts that were hidden regarding infringement, which ended early in the case

in August 2007 with a redesign disclosed to ITC *the day after it was implemented*.

Rudolph simultaneously acknowledged the damaging facts about the pre-2007

PRVX, leading to an adverse summary judgment in 2009.

Mr. Seubert's trial testimony does not show that Rudolph "hid its

infringement for years."  ITC argued that Rudolph knew its pre-2007 PRVX

products infringed based on Mr. Seubert's testimony related to his testing in 2007.

(A18317-23)  However, Mr. Seubert's testimony does not show that Rudolph knew

its products infringed because his statement was directed only to the first state

"contact" element and did not address any other claim elements.  (A9404:1-11;

A9479:18-80:6)  Testing one claim element cannot establish knowledge of

infringement, which requires *all* elements to be met.  *See, e.g.*, *TechSearch LLC v.

Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002); *Signtech USA, Ltd. v. Vutek,

Inc.*, 174 F.3d 1352, 1358 (Fed. Cir. 1999).  Mr. Seubert's testimony had nothing

to do with any claim elements other than the first state "contact" element.  (*Id.*)  He

was never asked about the other elements and certainly did not provide an opinion on them.  (*Id.*)

Further, even if Mr. Seubert subjectively believed there was infringement in 2007 (which is not shown by the record), his trial testimony in 2011 as a long-gone former employee cannot be imputed to Rudolph.  *See, e.g.*, *Frederick v. City of Portland*, No. 95-35389, 1996 U.S. App. LEXIS 26700, at *6-7 (9th Cir. 1996) (finding that statements of a former employee were not admissible as non-hearsay admissions of a party under FRE 801(d)(2) because the statements were made when he was no longer an employee).  Mr. Seubert left the company in 2007 before Rudolph even filed its summary judgment briefs.  (A9454:1-23)  The expert reports, *Markman* briefs, and summary judgment briefs show that Rudolph knew of defenses to infringement unrelated to the first state contact issue for the pre-2007 PRVX.

Under the district court's rationale, Rudolph apparently had to concede infringement without even consulting an expert in the field or analyzing claim scope through the *Markman* process.  And Rudolph would have had to so concede in 2007, based on the 2011 trial testimony of a former employee untrained in legal issues such as claim construction.  The court cited no authority for such an extreme approach.

Indeed, the jury rejected ITC's argument at trial that Rudolph's conduct satisfied the subjective prong of willful infringement because of Mr. Seubert's testimony.  (A10440:19-25; A17768)  The jury found that the infringement for the pre-2007 products was not willful and did not accept ITC's theory that Mr. Seubert's testimony showed bad faith or Rudolph's knowledge of infringement. (*Id.*)  That finding was adopted by the court and not appealed.  The court's reliance on Mr. Seubert's testimony to find the case exceptional was contrary to the jury's findings and an abuse of discretion.

> 2.  <u>The district court's allegation that Rudolph "provided false discovery responses" is wholly unsupported.</u>

The district court asserted Rudolph "provided false discovery responses." (A72)  This conclusion is unsupported by citation to any specific alleged false discovery responses.  In its original exceptional case finding, now vacated by this Court, the district court also referred to purported false discovery responses without citation.  (A17748)  Instead of citing anything specific in the record, the court speculated, stating that it "found it difficult to comprehend that Rudolph was acting in good faith in its discovery responses . . . in light of Mr. Seubert's knowledge" without further citation.  (*Id.*)  ITC's briefing similarly alleged that Rudolph provided "incorrect and incomplete written discovery responses" including "answers to interrogatories" without citing *any* specific responses. (A18323)

45

These allegations are simply not true. Rudolph *never* disputed that the pre-2007 PRVX products made contact in the first state. (A3692-96; A2199-201; *see also* A3311; A17778) Rudolph disputed infringement of the pre-2007 PRVX products based on *other* claim elements. (A3692-96; A2199-201) Indeed, Rudolph supplemented its interrogatory responses to reflect the design changes made to the PRVX products in August 2007. (A18358-59) ITC never sought redress before the district court for any allegedly false discovery responses. Reliance on uncited and non-existent discovery responses to find the case exceptional was an abuse of discretion.

        3.     <u>The district court's conclusion that Rudolph "filed summary judgment papers even though it knew its product infringed" also is unsupported.</u>

The district court asserted that Rudolph "filed summary judgment papers even though it knew its product infringed." (A72) To the extent this statement relies on Rudolph's positions as to infringement by the ProbeWoRx or the redesigned PRVX products, it is baseless because these products were found not to infringe on appeal. (A18257-63) The court's conclusory statement gives no assurance it did not commit this error.

The court's conclusory statement is also unsupported to the extent it is based on the only infringement issue Rudolph lost—the pre-2007 PRVX. As shown above, there is no evidence that Rudolph "knew" the pre-2007 PRVX products

infringed.  Rudolph knew the pre-2007 PRVX made contact in the first state, but Rudolph *never* contested that fact.  Dr. Wright's rebuttal report noted that only PRVX systems made *after* August 2007 had probes that did not contact the window in a "first state."  (A3606; A3610)  The district court's 2009 summary judgment order relied upon Rudolph's concession that the pre-2007 PRVX products satisfied the third element of claim 1 because they "touched" the window in both states.  (A17778)  ITC's own summary judgment briefing similarly acknowledged that Rudolph did not dispute the "touch" element for the pre-2007 PRVX products.  (A3311)

Instead of disputing that the pre-2007 PRVX products met the first state contact element, Rudolph argued that these products did not meet *other* elements of the relevant claims based on the analysis of its technical expert.  (A3692-96; *see also* A2199-201)  Specifically, Rudolph explained that the pre-2007 PRVX products did not infringe because they lacked the structure for "determining the location of a scrub mark" as required by the means-plus-function element of claim 1.  (A3693; *see also* A3692; A2199-201)  Rudolph explained that the PRVX products compared the probe tips locations to the known coordinates of the bonding pad, and thus did not calculate the difference between the locations of the probe tips in two states to determine location as required by the court's construction of this element.  (*Id.*)

The court disagreed with Rudolph, finding that comparing probe tip locations to a bonding pad location "instead of merely comparing the locations themselves" was still an infringement of the means plus function element. (A17779-80)  Rudolph's factual and legal arguments were not frivolous, however. The district court's exceptional case finding fails to freshly analyze Rudolph's arguments post-appeal to determine if they were reasonable or even acknowledge that Rudolph made such arguments.  *See Octane*, 134 S. Ct. at 1756 n.6 (citing "objective unreasonableness" as a factor for district courts to consider in determining whether a case is exceptional).  Although the court's 2009 summary judgment opinion found that Rudolph did not present a "serious defense" to infringement, it did not find Rudolph's defense baseless and ITC never moved for Rule 11 sanctions or attorney's fees.  (A17785)  Especially in view of the many issues Rudolph won, its pursuit of one losing theory does not justify an exceptional case finding.  *See, e.g.*, *Depuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009) (reversing the finding of exceptionality that was based on assertion of a defense that "lack[ed] merit"); *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1061 (Fed. Cir. 1986) (finding no exceptional case where the party "raised a colorable, albeit weak, argument that was not raised in bad faith").  The district court's exceptional case finding without acknowledging these contrary facts was an abuse of discretion.

4.    Rudolph's patent ownership issue was legitimate and does not support an exceptional case finding.

Patent ownership is directly tied to a plaintiff's ability to claim lost profits damages.  *Poly-Am. v. GSE Lining Tech.*, 383 F.3d 1303, 1310-12 (Fed. Cir. 2004).  ITC's amended complaint and the deposition testimony of its Vice President John Geist[2] indicated that the co-plaintiff ITC Nevada, a holding company that sells nothing, owned the '894 patent.  (A17588; A17592; A9084:7-85:15; *see also* A8947:19-48:9; A10449:23-25)

Based on these facts, Rudolph reasonably raised the issue of patent ownership.  Citing this Court's decision in *Poly-Am. v. GSE Lining Tech.* in its post-trial briefing, Rudolph explained its importance of the issue to the availability of lost profits:

11    (PX1236.) That representation remains uncorrected even today. Where, as in this case, a
12    patentee claims lost profits, the ownership of the patent in suit is a key issue, affecting
13
14    standing and damages. If the patent is owned by a holding company, such as ITC Nevada,
15    that will defeat a lost profits claim. A plaintiff corporation that owns a patent is not
16    entitled to claim damages for the profits lost by its sister corporation which does not.
17    *Poly-Am. v. GSE Lining Tech.,* 383 F.3d 1303, 1310-12 (Fed. Cir. 2004). ITC either (1)

(A7273)

---

[2] Mr. Geist later recanted this testimony.  (A9084:7-85:15) However, this self-serving retraction did not eliminate the fact that his prior testimony supported a finding that ITC Nevada owned the patent.

The district court relied on the ownership issue to support its finding of misconduct, calling it "a never fully explained theory." (A72) The district court previously acknowledged it did not understand the patent ownership argument. (*See* A17748 ("Perhaps there is some imperceptible nuance to this argument but on the present record Rudolph's ownership claims appear to be completely divorced from reality.")) The court's misunderstanding, however, does not make Rudolph's argument grounds for a fee award. It was a sound legal theory based factually on ITC's own testimony and pleadings. Basing an exceptional case finding on the advancement of a sound legal theory supported by evidence in the record is an abuse of discretion. *See, e.g.*, *Depuy Spine*, 567 F.3d at 1339 (Fed. Cir. 2009) (a party's good-faith assertion of a defense with legal and factual support is not a proper basis for an exceptional case finding); *TVI Energy*, 806 F.2d at 1061 (same).

5.   Rudolph's legitimate opposition to the broad scope of the injunction was not a "semantic game."

Finally, the district court stated that Rudolph "during and after trial played semantic games regarding what its machines did and what functions were important to it and its customers." (A72) This is the only statement for which the district court provides a citation to the record. This citation is not to anything Rudolph said or any other actual support for the charge, however. Instead, it refers to a footnote in the district court's original decision entering an injunction. (*See*

50

*id.*; A17754)  There, the court said Rudolph was not "forthright regarding how its machines operate and whether its machines are practicing the claims at issue." (A17754)  This criticism was infected by the court's original, erroneous belief that Rudolph's redesign was a sham.  (A17746-50)  Yet the court erroneously claimed that it could rely on such prior findings because they had "no connection to the now-vacated willfulness finding."  (A72)

The district court apparently considered it to be evidence of an "exceptional case" for Rudolph to contest the breadth of ITC's proposed injunction.  But Rudolph had every right to contest the injunction.  The injunction covered the non-infringing ProbeWoRx and redesigned PRVX products and barred Rudolph's sales and service activities for these non-infringing products.  (A17756-57; *see also* A17752-55)  It even barred sales of products that did not infringe, unless Rudolph asked for permission to sell them and either ITC or the court approved them.  (*Id.*) This Court stayed the injunction, confirming Rudolph's objections were made in good faith.  (A18219-21)  Relying on Rudolph's opposition to an overbroad injunction that was stayed by this Court to find the case exceptional is an abuse of discretion.

In sum, none of the purported grounds cited as support for the exceptional case finding withstand scrutiny.  The district court abused its discretion when it relied on unsupported and immaterial findings to find this case exceptional.

51

Rudolph's conduct and behavior was unexceptional throughout the case, and the record does not support an exceptional case finding. The exceptional case finding should be reversed.

### III. The district court erred as a matter of law in failing to separately find the fee award justified or relate it to the alleged misconduct, and abused its discretion by awarding fees for the whole case.

The district court failed to conduct an analysis of whether fees should be awarded separate from its exceptional case finding. This is an error of law because an exceptional case finding does not automatically lead to a fee award. The court also erred as a matter of law by failing to apportion the fee award to the alleged misconduct. The district court further abused its discretion by awarding ITC all its fees for the entire case. The district court improperly relied on a stipulation between the parties relating to the total amount of fees incurred by ITC for the case, entered after the district court already decided to treble damages and award all of ITC's requested fees. The stipulation related only to the reasonableness of ITC's fees under the circumstances as they existed at the time. The fee award should be reversed.

### A. The district court erred as a matter of law by failing to separately determine whether fees were appropriate.

An award of fees under Section 285 requires two steps: (1) decide if the case is exceptional, and (2) if the case is exceptional, decide whether an award of fees is appropriate. *See Octane*, 134 S. Ct. at 1755-56 (explaining that the district court's

discretion to award fees is constrained to exceptional cases); *see generally Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc); *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996). The text of Section 285 supports this two-step analysis, as it indicates that a court "may" award fees in exceptional cases—not that it must. 35 U.S.C. § 285. Even if a court finds a case exceptional, it is required to perform a separate analysis regarding the propriety of any fee award and the reasonableness of any such award. *National Presto*, 76 F.3d at 1197 (noting that an "*award of attorney fees under 35 U.S.C. 285 is not automatic, even for the extraordinary case*" (emphasis added)). Several factors may be taken into account such as the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice. *Id.*

Here, the district court erred as a matter of law because it failed to conduct *any* analysis regarding whether an award of fees was appropriate once it found the case exceptional. The court merely stated that "[a]n award of fees is appropriate." (A72) To the extent the necessary analysis is implicit, it was infected by the prior willfulness findings and thus failed to comply with the mandate. The relevant factors do not support a fee award. As explained in prior sections, Rudolph was an innocent, not willful infringer; and the questions were not only close but most often resolved in Rudolph's favor. Rudolph immediately implemented a non-

infringing redesign.  Moreover, the jury awarded ITC lost profits for pre-2007

infringement believing, in error, that Rudolph had no non-infringing alternatives.

ITC also received windfall relief at least through an overbroad injunction.  The

court's failure to separately support its fee award is error as a matter of law.

**B.      The district court abused its discretion by failing to support its fee award with facts.**

"An award of attorney fees without basis in the record is an abuse of

discretion." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511

(Fed. Cir. 1990); *see also Precision Links Inc. v. USA Prods. Grp.*, 527 Fed. Appx.

852, 858 n.4 (Fed. Cir. June 7, 2013) (district court must make specific findings to

support a fee award); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1540 (Fed. Cir.

1984) ("An award of attorney fees is reviewed under the abuse of discretion

standard, and an award must be set aside if it is unsupported by adequate findings

of the basis for the award.").  Here, the court did not support its fee award with

facts or analysis.  Instead, it relied on a conclusory one-paragraph analysis which,

as shown in prior sections, is unsupported in the record.  This is an abuse of

discretion.

**C.      An award of fees on these facts would be excessive and an abuse of discretion.**

Separate from all the issues above, the district court's award of fees on the

facts of this case is an abuse of discretion.  ITC's request for all of its attorney's

fees cannot be justified when none of the case after 2009 and such a small

percentage of the case before 2009 involved the issue addressed by the alleged

(and still disputed) misconduct.

> 1.    Rudolph's alleged misconduct accounted for a small portion of the total fees.

Any alleged acts of misconduct on Rudolph's part could only have

accounted for a small portion of the fees sought.  Rudolph ceased disputing

infringement of the pre-2007 PRVX after summary judgment in December 2009.

Rudolph did not dispute such infringement at trial in December 2011 or on appeal

before this Court.  ITC provided *no evidence* that any fees it incurred after

December 2009 related to the purported misconduct.  Certainly a significant

amount of ITC's fees arose after summary judgment was decided in December

2009 because trial was not until December 2011.  These post-2009 fees were spent

addressing ITC's defective and ultimately unsuccessful equivalents claims and

other issues, not infringement by the pre-2007 PRVX machines.

Even before the summary judgment decision in December 2009, the fees

associated with pre-2007 PRVX infringement were likely a small fraction of ITC's

total fees.  After Mr. Seubert's August 2007 deposition, ITC knew how the pre-

2007 PRVX products operated and that Rudolph redesigned them to avoid

infringement.  (A7917:107:4-20)  As ITC and the district court both

acknowledged, Rudolph admitted its pre-2007 PRVX products satisfied the first state contact element.  (A3311; A17778)

ITC's moving and reply summary judgment briefs relating to the pre-2007 infringement addressed many other issues.  Only eight of 22 pages of ITC's summary judgment brief discuss infringement of the PRVX machines.  (A3307-14) Of the eleven pages in ITC's summary judgment reply brief, only page three and part of page four focus on infringement by Rudolph's pre-2007 PRVX machines. (A4028-29)  Of the 28 pages in ITC's response in opposition to summary judgment, only pages 6-7 and 13-17 are dedicated to discussing Rudolph's infringement of the '894 patent by its pre-2007 PRVX machines.  (A3658-59; A3665-69)  ITC's briefs also addressed many issues it lost, including the doctrine of equivalents, infringement of the '394 patent, and willfulness.  Any fees relating to the alleged misconduct were a small fraction of the case.

### 2.    ITC's own defective arguments inflated its fees.

ITC's own losing arguments prolonged the litigation and inflated its fees. Rudolph's success on many issues should have been considered as grounds for reducing the fee award.  *See, e.g.*, *Sensonics*, 81 F.3d at 1575 (holding that both parties' conduct may be taken into account when determining whether a case is exceptional under § 285); *Beckman*, 892 F.2d at 1554 (when imposition of fees is not based on willfulness, the fact that "one party prevail[ed] on some claims in

issue while the other party prevail[ed] on other claims . . . be taken into account when determining the amount of fees under § 285").

ITC incurred significant fees under its doctrine of equivalents argument based on its defective position that its amendment during prosecution was not narrowing.  Rudolph showed that equivalents were barred as a matter of law due to ITC's narrowing claim amendment during prosecution.  (A18256; A18258-60; *see also* A2198-99; A4544-46; A6113-18; A7093-96; A7313-22)  However, through summary judgment, trial, post-trial briefing, and appeal briefing, ITC argued that the doctrine of equivalents was available because the key claim amendment was not narrowing.  (A3675-76; A6340-42; A8021-22; A18259-60)  ITC even chided Rudolph for raising the issue repeatedly.  (A8017)  This Court found that the argument *was* narrowing as a matter of law and reversed the finding of infringement under the doctrine of equivalents.  (A18257-63)  ITC admitted the amendment was narrowing at oral argument before this Court, despite its previous and repeated arguments to the contrary.  (A18362:15:15-18)  Had ITC appropriately conceded this at the beginning of the case, it would have saved far more fees regarding equivalents than it incurred dealing with infringement by the pre-2007 PRVX.

ITC incurred additional fees in unsuccessfully advancing literal infringement for the ProbeWoRx and redesigned PRVX products.  All of Rudolph's factual and

expert witnesses and technical documents, as well as the evidence of the operation of the product, demonstrated that the probe tips of the accused ProbeWoRx and redesigned PRVX machines did not touch the window during the first image capture and thus did not literally infringe.  (A9879:13-80:23; A9894:24-95:23; A9903:1-23; *see also*; A9724:6-16; A9728:11-22; A9740:2-10; A9989:24-90:8)  ITC's expert who opined on literal infringement *never looked at the accused machines and was unable to read the source code used by them*.  (A9109:5-14; A9165:1-21; A9197:3-99:13)  Likewise, ITC advanced an unsuccessful infringement case for an entirely different patent.  (A17782-84)  Especially now that willfulness is out of the case, ITC should not be reimbursed for the significant fees incurred in pressing these meritless arguments before the district court.

There is no need to remand because ITC failed to provide any evidence that would tie its claimed fees to the alleged misconduct.  ITC had its chance to argue for a reasonable amount of fees under the proper standard, but it failed to do so.  *See Lindemann*, 730 F.2d at 1458 (reversal is appropriate when the appealed judgment is based on legal error and unsupported by evidence in the record); *Panduit*, 810 F.2d at 1565-66 (same).  Reversal is appropriate.

### D.    The district court erred as a matter of law by failing to apportion the fee award based on the alleged misconduct.

*Rambus Inc. v. Infineon Techs. AG* (a pre-*Brooks Furniture* case) counsels that if an award of fees is requested for "misconduct," the fees must "bear some

relation" to the alleged misconduct.  318 F.3d 1081, 1106 (Fed. Cir. 2003); *see also Read*, 970 F.2d at 831 (same); *see generally Hoechst Celanese Corp. v. BB Chems. Ltd.*, Nos. 94-1362, -1370, 1995 U.S. App. LEXIS 24248, at *17 (Fed. Cir. Aug. 25, 1995) ("only one of the five instances of litigation misconduct cited by the district court serves as a proper basis for an award of attorney's fees" such that the district court "only had discretion to award attorney's fees commensurate with that misconduct").  The requirements for determining the proper amount of fees were left unchanged by *Octane* and *Highmark*.

The exceptional case finding and fee award should be reversed, which moots the issue of apportionment.  *See Lindemann*, 730 F.2d at 1458 (reversal is appropriate when the appealed judgment is based on legal error and unsupported by evidence in the record); *Panduit*, 810 F.2d at 1565-66 (same).  To the extent the fee award is not reversed outright, the district court erred as a matter of law by failing to apportion the fee award to the alleged misconduct.

ITC argued it was entitled to fees for the *entire* case based on little more than purported misconduct regarding one issue of many—infringement by the pre-2007 PRVX.  Yet the district court awarded *all* of ITC's fees.  ITC and the district court wholly ignored the apportionment requirement.  That was an error as a matter of law that justifies, at a minimum, vacating the fee award with instructions on

remand to award fees only for the fees ITC incurred in seeking summary judgment that the pre-2007 PRVX infringed—a mere fraction of the total fees.

Instead of apportioning fees, the district court relied on a pre-appeal stipulation regarding the total amount of fees. (A72) The stipulation was entered after the court issued its July 23, 2012 Order that relied on the erroneous findings of infringement and willfulness and granted ITC's motion for treble damages and an award of its fees for the case without qualification. (A17757; A18396.1-.3) The stipulation related only to the *reasonableness* of the requested fees *after* the court awarded ITC its fees, based on ITC's representation of the actual fees it would pay its counsel based on a billed amount and a "contingent amount of one million dollars." (A18396.1) The stipulation was *not* an acceptance by Rudolph that fees were properly awarded. Indeed, the stipulation permits Rudolph to contest ITC's entitlement to fees on appeal or otherwise as may be appropriate, and does not relieve ITC or the court of its duty to show that fees are reasonably related to any alleged misconduct absent willfulness:

> As you may recall, ITC initiated the lawsuit claiming Rudolph infringed both the '894 and '394 patents. Rudolph successfully sought dismissal of ITC's claims related to the '394 patent. Further, Rudolph successfully obtained a jury verdict that its PRVX4 and ProbeWoRx systems did not literally infringe any claim of the '894 patent. These, among others issues, would offset the amount ITC requests.
>
> We are mindful, however, that disputing the reasonableness of your request will result in additional fees for both sides. Therefore, Rudolph will **not contest** the reasonableness of ITC's request for fees in the amount of $3,252,228.50. This agreement solely relates to the reasonableness of the dollar amount and does not in any way limit Rudolph's ability to contest or appeal ITC's entitlement to attorneys' fees on appeal or otherwise as may be appropriate, which right Rudolph specifically reserves.

(*Id.*) Even a *reasonable* fee must be properly apportioned when based solely on purported misconduct. That was not done here.

Further, the law recognizes that stipulations such as the one entered here do not survive when they are premised on circumstances fundamentally undermined by reversed and remanded decisions. *See, e.g.*, *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012) (stipulation based on district court erroneous construction of a claim term not binding, resulting in vacating and remanding); *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1349-1350 (Fed. Cir. 2006) (same); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1327 (Fed. Cir. 2001) (same). All willfulness findings were reversed on appeal, and the fee award was vacated and remanded. Any stipulation directed to the fee award would likewise not survive the changed circumstances.

The district court's failure to calculate the proper amount of fees absent willfulness should not be insulated from review by an obsolete stipulation to ITC's

entire fees.  Rudolph entered that stipulation before it succeeded in having the

willfulness and treble damages findings reversed and the fee award reversed and

remanded.  Punishing Rudolph for agreeing not to contest the *reasonableness* of

the claimed amount of fees, when the fee award underlying the stipulation was

later found to be erroneously infected by the willfulness findings, discourages

parties from efforts to narrow the issues.  Further, such a result is unsupported by

the language of the stipulation or the law.  The stipulation did not address what

would happen if this Court reversed the award of fees.  It cannot shield ITC or the

district court from conducting an apportionment analysis, appropriate now that

willfulness and the original fee award have been vacated.  The district court's

failure to do so was an error of law that, at a minimum, requires a remand with

instructions to limit any fee award to the fees incurred by ITC in opposing

summary judgment as to the pre-2007 PRVX products—a small fraction of its total

fees.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's

finding of an exceptional case and award of fees under 35 U.S.C. § 285.


Dated: January 13, 2015                              Respectfully submitted,

                                                     /s/ Daniel W. McDonald
                                                     Daniel W. McDonald
                                                     Rachel C. Hughey
                                                     Merchant & Gould, P.C.
                                                     3200 IDS Center
                                                     80 South 8th Street
                                                     Minneapolis, MN 55402
                                                     Tel: 612.332.5300

                                                     *Attorneys for Defendants-Appellants*
                                                     *Rudolph Technologies, Inc., et al.*

# ADDENDUM

Order regarding Attorneys' Fees (Dkt 646)
        August 8, 2014……………………………………A000071

Judgment on Attorneys' Fees (Dkt 647)
        August 8, 2014……………………………..…A000074

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                      FOR THE DISTRICT OF ARIZONA
8
9    Integrated Technology Corporation, et al.,)    No. CV-06-2182-PHX-ROS
                                              )
10            Plaintiffs,                     )    **ORDER**
                                              )
11   vs.                                      )
                                              )
12                                            )
     Rudolph Technologies, Inc., et al.,      )
13                                            )
              Defendants.                     )
14                                            )
                                              )
15   ─────────────────────────────────────

16         There is only one issue left to resolve: whether this case is "exceptional" pursuant to

17   35 U.S.C. § 285 such that Rudolph Technologies, Inc. ("Rudolph") should be required to pay

18   the attorneys' fees incurred by Integrated Technology Corporation ("ITC"). The Supreme

19   Court recently lowered the bar for awarding fees under § 285. Rejecting the Federal

20   Circuit's "overly rigid" standard, the Supreme Court held "an 'exceptional' case is simply

21   one that stands out from others with respect to the substantive strength of a party's litigating

22   position (considering both the governing law and the facts of the case) or the unreasonable

23   manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness,*

24   *Inc.*, 134 S. Ct. 1749, 1756 (2014). Importantly, the Supreme Court also stated "proof of

25   entitlement to fees" need only be established by a preponderance of the evidence, not by the

26   clear and convincing evidence the Federal Circuit previously required. *Id.* at 1758. In light

27   of this lowered standard, ITC is entitled to an award of fees.

28

1    The Court previously found this case exceptional under the now-overruled Federal
2    Circuit approach. (Doc. 546). That ruling was based on Rudolph's behavior during litigation
3    and the jury's finding of wilfulness. On appeal, the wilfulness finding was reversed and the
4    case remanded for a determination whether an award of attorneys' fees was still merited.
5    (Doc. 618-1). Having reviewed the parties' voluminous filings throughout this case, an
6    award of fees is still appropriate because most of the underlying facts supporting an award
7    of attorneys' fees have no connection to the now-vacated wilfulness finding.

8    In brief, the record establishes the following: Rudolph hid its infringement for years,
9    provided false discovery responses, filed summary judgment papers even though it knew its
10   product infringed, argued a never fully explained theory that ITC did not own the underlying
11   patent, and during and after trial played semantic games regarding what its machines did and
12   what functions were important to it and its customers. (Doc. 546 at 20 n.9) (explaining
13   Rudolph refused "to be forthright regarding how its machines operate" and the terms of
14   injunction were an attempt to prevent "Rudolph from simply redefining certain terms in such
15   a manner so it can claim its machines are outside literal coverage"). The striking weakness
16   of Rudolph's position regarding its pre-2007 PRVX machines, as well as the unreasonable
17   manner in which it litigated the case through trial and post-trial motions, satisfy the Supreme
18   Court's standard under § 285 for awarding fees. In fact, *either* the substantive strength of
19   many of Rudolph's litigating positions or the "unreasonable manner in which the case was
20   litigated" make this case stand out from others. An award of fees is appropriate.[1] The parties
21   previously stipulated to the amount of fees. (Doc. 550-1 at 4).

22   Accordingly,

23   **IT IS ORDERED** the Motion for Attorneys' Fees (Doc. 629) is **GRANTED**.

24   **IT IS FURTHER ORDERED** the Motion for Leave to File (Doc. 643) is
25   **GRANTED**.

26   ───────────────

27   [1] ITC also seeks an award under the Court's inherent power. (Doc. 629 at 9).
28   Rudolph's actions in this case, while sufficient to support an award under § 285, do not rise
     to the level necessary for an award under the Court's inherent powers.

- 2 -

1    **IT IS FURTHER ORDERED** the Clerk of Court is directed to enter judgment in

2    favor of Plaintiffs and against Defendants in the amount of $3,252,228.50 for attorneys' fees.

3    DATED this 8th day of August, 2014.

4

5

6

7    Honorable Roslyn O. Silver
     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Integrated Technology Corporation, et al., | ) | **JUDGMENT ON ATTORNEY FEES** |
| | ) | |
| Plaintiffs, | ) | CV-06-2182-PHX-ROS |
| | ) | |
| v. | ) | |
| | ) | |
| Rudolph Technologies, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\_\_\_    Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

<u>X</u>    Decision by Court.  This action came for consideration before the Court.  The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that pursuant to the Court's Order filed August 8, 2014, judgment is entered in favor of plaintiffs and against defendants in the amount of $3,252,228.50 for attorneys' fees.

BRIAN D. KARTH
District Court Executive/Clerk

August 8, 2014

s/L.Figueroa
By: Deputy Clerk

cc: (all counsel)

**PROOF OF SERVICE**

I hereby certify that on January 13, 2015, a copy of the Brief of Defendants-

Appellants, was filed electronically with the Clerk of Court using the CM/ECF

system, which will send a Notice of Docket Activity to the following attorneys,

who are CM/ECF registrants:

Jay R. Campbell
Joshua M. Ryland
TUCKER ELLIS, LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
jay.campbell@tuckerellis.com
josh.ryland@tuckerellis.com

Todd R. Tucker
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
ttucker@calfee.com


/s/ Daniel W. McDonald
Daniel W. McDonald

## CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)

Pursuant to Federal Rule of Appellate Procedure 32(a), I certify that this

brief complies with the type-volume limitation:

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,379 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14 Times New Roman font.

Dated: January 13, 2015

/s/ Daniel W. McDonald
Daniel W. McDonald